John P. HARRINGTON, Appellant,

v.

Cheryl A. JORDAN, Appellee.

No. S–8899.

Supreme Court of Alaska.

July 30, 1999.

John P. Harrington, pro se, Anchorage.

No appearance by Appellee.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

PER CURIAM

### I. INTRODUCTION

When John Harrington and Cheryl Jordan divorced in 1996, Cheryl retained sole physical and legal custody of their two daughters. Nine months later, John moved for custody modification; the superior court denied his request without a hearing. John moved again in August 1998 for modification of both custody and child support; the superior court denied the second motion without a hearing. John appeals, arguing that he has demonstrated a sufficient change of circumstances for modification of both custody and child support. We affirm.

### II. FACTS AND PROCEEDINGS

John Harrington and Cheryl Jordan were married on October 17, 1981. They have two daughters: Jessica, born in 1982, and Tara, born in 1986. John and Cheryl separated in May 1995 and, after a "lengthy and bitterly disputed divorce trial,"[1] finalized their divorce on November 12, 1996.

Superior Court Judge Beverly W. Cutler determined that awarding Cheryl "sole legal and physical care, custody, and control of the minor children of the marriage" would best serve the children's interests. Judge Cutler granted John "liberal and frequent visitation" with both daughters. Specifically, John received "two weekends out of every three, for a 48 hour period," as well as the month of July each summer and alternating major holiday vacations. Judge Cutler also ordered John to pay $802.14 per month in child support for the two children.

Judge Cutler based her decision in part on the recommendations of the Custody Investigator's Office; the children's therapist, Cheryl Mitchell; and the parent's psychological evaluator, Dr. Bruce Smith. The trial court also considered the "huge schism" in communication that existed between John and Jessica; the fact that Cheryl was "somewhat more likely than [John] to eventually bring herself to being able to 'give the children permission' to have a stable, healthy relationship with [the other parent]"; and John's unwillingness to disclose the identity of his female partner. John appealed the divorce decree; we affirmed the superior court's decision in all respects on March 18, 1998.[2]

In June 1997 John requested a hearing on custody modification, alleging that Cheryl made visitation difficult; that his relationship with Jessica had improved; that Cheryl had moved frequently and planned to move again; that he could better meet the children's spiritual and educational needs; and that his job situation had changed to allow him to stay in town for a longer period.

Judge Cutler denied John's request, commenting that "the parties and children barely have had time to digest the final custody order, . . . much less time to manifest the kind of changed circumstances that justify a custody modification." Judge Cutler found that the visitation problems did not constitute a substantial change in circumstances and that, contrary to John's claims, many of the visitation problems stemmed from genuine planning difficulties. Judge Cutler also found that Cheryl's multiple moves had been a justified and necessary part of readjustment after the divorce and that Tara and Jessica should live together if possible. Judge Cutler relied on the original Custody Investigator's recommendation that was "overwhelmingly in favor of awarding custody to [Cheryl]" as well as on a social worker's letter describing "the level of anxiety

---

**1.** *Harrington v. Jordan*, Mem. Op. & J. No. 0877 at 1 (Alaska, March 18, 1998).

**2.** *See id.* at 21.

experienced by Jessica when faced with merely visiting [her father]."

Since August 1997 John has filed numerous motions requesting relief from rulings, clarification of rulings, expedited consideration of motions, recusal of Judge Cutler, and changes in visitation schedule. On August 17, 1998, John again requested a hearing on modification of the custody/support order. John claimed that changed circumstances since the court's original decree two years earlier warranted a shared custody arrangement and a corresponding change in his child support obligation. Specifically, he cited an increase in his overnight visits with Tara, his willingness to name his partner, the girls' declining need for sibling support, and Tara's good relations with John's partner as changes in circumstances warranting modification.

Judge Cutler denied John's request for a hearing on September 29, 1998. In justifying her decision, Judge Cutler wrote:

> Particularly, not more than 110 overnights per calendar year have been demonstrated. The 1998 "extra" summer visitation is not likely to repeat in 1999. With regard to not holding a hearing on custody modification, the court further finds that a hearing likely would be detrimental to either or both children based on the present continuing dynamic between the parties and children.

John appeals.

## III. STANDARD OF REVIEW

■■■ Whether a moving party has made a prima facie showing sufficient to justify a custody or child support modification hearing is a matter of law that we review de novo.[3] We will affirm a denial of a modification motion without a hearing "if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and

so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing." [4]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Denying Harrington's Request for a Modification Hearing.

#### 1. Custody

■■■ To be entitled to a custody modification hearing, a moving party must make a prima facie showing of a substantial change in circumstances affecting the children's welfare: [5]

> When a parent moves to modify custody, the court must "consider" the motion, but need not hold a hearing "if it is plain that the facts alleged in the moving papers, even if established, would not warrant a change." The moving parent must show changes that affect the child's welfare; reflect more than mere passage of time; and overcome our deep reluctance to shuttle children back and forth between parents.[6]

■■■ Here, John did not make an adequate showing. With respect to the alleged increase in John's overnight visits with Tara, John claims that Tara had 131 overnight visits between August 1997 and August 1998 and that her overnight visits for the 1998 calendar year already totaled 94 as of the end of August and would likely exceed 110 by the year's end. But John only accrued the unusual number of overnights because of a special summer 1998 visitation schedule that the court and the parties created to accommodate a family trip. And the court noted in its order denying a hearing that "[t]he 1998 'extra' summer visitation is not likely to repeat in 1999." Because the superior court found that the extra visitation would not likely be repeated, it was justified in finding that the 1998 visitation schedule did not qualify as a substantial change of circumstances entitling John to a hearing.

---

**3.** See Morino v. Swayman, 970 P.2d 426, 428 (Alaska 1999) (citing C.R.B. v. C.C., 959 P.2d 375, 378 (Alaska 1998)).

**4.** Id. (quoting C.R.B., 959 P.2d at 378); see also C.R.B., 959 P.2d at 378, 378 n. 5 (drawing upon principles of summary judgment to describe the standard of review for both child support and

custody modification determinations without a hearing).

**5.** See C.R.B., 959 P.2d at 381.

**6.** Id. (footnote and citations omitted).

■ John's allegation that Cheryl has made visitation difficult is also insufficient to warrant modification. In June 1998, at John's request, the court ordered both Cheryl and John to allow and encourage telephone visitation with the other parent, primarily directing its admonition toward Cheryl. John only points to one incident occurring after this order in which Cheryl allegedly made visitation difficult. Enforcement of the current visitation order is the most effective and appropriate solution to John and Cheryl's visitation difficulties, especially in light of our "deep reluctance to shuttle children back and forth between parents." [7]

■ The other changes in circumstances that John alleges—the fact that "Jessica and Tara's sibling need to be together is not as strong as it was," the fact that Tara "loves [John's] fiancee," and the fact that John is "now willing to reveal [his] partner"—are also insufficient to justify a modification hearing. Although such changes may demonstrate that certain problems with joint custody are no longer present, they do not address the issues upon which the court based its original custody decree, such as John's poor relationship with Jessica, the custody investigator's recommendation that Cheryl have custody based on an interview with the children's therapist, and a finding that John exhibited "pressuring" behavior.[8]

John also argues that the trial court should not have considered the potential detrimental effect of a modification hearing on the children. But commentators have noted the counterproductive effect of unnecessary litigation on all parties, including children.[9] Although such a consideration should not be a reason for denying a hearing if the moving parent has otherwise met the prima facie burden, that is not the case here.

### 2. Child Support

John also claims that the superior court should have granted him a hearing on modification of the child support order. Specifically, he argues that because the number of Tara's overnight visits with him exceeded 110 during the period from August 1997 to August 1998, the court must modify the support award pursuant to Alaska Civil Rule 90.3(f)(1).[10]

■ Rule 90.3(h)(1) provides that a support award "may be modified upon a showing of a material change of circumstances." Even if the moving parent alleges facts that "might demonstrate a material change of circumstances if they were established, the superior court need not conduct a hearing where the moving party advances only 'generalized allegations of factual issues' that other record evidence convincingly refutes."[11]

■ Here, the extra overnight visits in 1998 do not constitute a material change of circumstances. As explained above, the additional four-week visit with John during August 1998 was an "aberration." John presents no evidence that the special summer visitation would be repeated in subsequent years; the court did not provide for such future increases in its order allowing the extra visitation during the summer of 1998.

## V. CONCLUSION

Because John's allegations, even if true, embody neither a substantial change of circumstances sufficient to warrant custody modification nor a material change of circumstances sufficient to warrant modification of John's child support obligation, we AFFIRM.

7. *Id.*

8. *See Harrington v. Jordan*, Mem. Op. & J. No. 0877 at 8, 9, 11 (Alaska, March 18, 1998).

9. *See, e.g.,* Janet Weinstein, *And Never the Twain Shall Meet: The Best Interests of the Children and the Adversarial System,* 52 U. Miami L.Rev. 79, 133 (1997) ("Rather than teaching parents to communicate and collaborate effectively after divorce for the benefit of their children, [the adversarial system] builds higher walls.").

10. Alaska Civil Rule 90.3(f)(1) considers a parent to have "shared physical custody" if "the children reside with that parent for a period specified in writing of at least 30 percent of the year, regardless of the status of legal custody."

11. *Acevedo v. Burley,* 944 P.2d 473, 475 (Alaska 1997).

the superior court's denial of John's request for a modification hearing.