Branwen COLLIER f/k/a Mendel–
Gleason, Appellant,

v.

William Aubrey HARRIS, Appellee.

No. S–13496.

Supreme Court of Alaska.

Sept. 2, 2011.

Rehearing Denied Oct. 11, 2011.

Mary A. Gilson and Lori Colbert, Mendel & Associates, Anchorage, and Karla F. Huntington, The Law Office of Karla F. Huntington, Eagle River, for Appellant.

David W. Baranow, Law Offices of David W. Baranow, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

CHRISTEN, Justice.

## I. INTRODUCTION

Parents agreed to shared physical custody of their daughter, and the superior court decided that joint legal custody was in the child's best interest. The mother later filed a motion for modification of joint legal and shared physical custody, asserting that her work schedule had changed since the parties agreed on a physical custody schedule, that the father had violated court orders, and that he was not communicating effectively. The mother sought sole legal and primary physi-cal custody. The superior court denied the motion without a hearing and awarded attorney's fees to the father. We affirm the superior court's decision that the mother was not entitled to a hearing on her motion to modify custody under the circumstances of this case, but vacate the award of attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Proceedings Through Trial.

Branwen Collier and William (Will) Harris are the parents of a daughter, Zada.[1] The couple ended their relationship in March 2006 and Branwen filed a complaint for custody of Zada. Trial was delayed to give the parties an opportunity to resolve their differences through a settlement conference.

At settlement conferences held in May and July 2007, the parties came to agreement on several issues, including: child support, day-care, insurance, the schedule for shared physical custody, the name on Zada's birth certificate, and the parents' means of communication. At the time of the partial settlement, Branwen was a full-time student with a flexible schedule during the week and Will worked a conventional Monday through Friday work week with flexible time on weekends. This was the basis for the physical custody schedule, which provided for Will to have physical custody of Zada most weekends and Branwen to have physical custody most weekdays. A number of issues were not resolved at the settlement conferences, including: legal custody, the division of Zada's Permanent Fund Dividend, the use of the dependency tax exemption, and the start date for Will's child support obligation. The unresolved matters were left for trial.

In February 2008 the superior court entered a partial custody order incorporating the terms of the parties' settlement agreement. The order was fairly detailed on the issue of physical custody, but the issue of legal custody was held in abeyance for another six months. The superior court established the parties' respective responsibilities for financially supporting Zada and ordered the parents to engage in co-parenting coun-

---

1. We use a pseudonym for the daughter to pro- tect her privacy.

seling to help them improve the effectiveness of their communication with each other. Trial was scheduled for September 30 and October 1, 2008 on legal custody.

On August 6, 2008, Branwen filed a motion for appointment of a custody investigator. She claimed the appointment was necessary because "[t]he parties have little history of communication, and it would be difficult for either party to gather the necessary information about the other without the assistance of a neutral investigator." At the same time, Branwen filed a motion for an order to show cause. She claimed that Will had violated the court's orders to pay child support, pay for daycare, maintain Denali Kidcare, and allow Branwen reasonable telephone access to Zada. The court denied Branwen's motion for appointment of a custody investigator but decided to delay ruling on the motion for an order to show cause until trial.

In September 2008, less than two weeks before trial, Branwen filed a motion to modify physical custody. Branwen argued that there had been a substantial change in circumstances since the May and July 2007 settlement conferences. These claimed changes included the failure of effective communication between the parties, Will's alleged violations of court orders, and a change in Branwen's schedule due to her graduation from college and entry into the workforce full-time. The superior court denied the motion, observing: "[t]he court does not find a substantial change in circumstances." The court was clear that the scope of the October 2008 trial would be limited. The court ruled it would "not revisit the issue of physical custody, support or other extrinsic matters in the absence of proper motion and due process opportunity to respond" and "evidence shall not be presented at the trial . . . on modification of physical custody of the parties' minor child."

Trial was held over two days in October 2008. The court found joint legal custody to be in Zada's best interest and ordered specific terms for parent communication to make joint legal custody successful. In addition, the court addressed Branwen's August motion for order to show cause why Will should not be held in contempt for violations of the February 2008 custody and support order. The court decided that Branwen's allegation that Will had not provided reasonable telephone access to Zada "was not established by a preponderance of the evidence." But the court also found that Will had not paid his share of Zada's daycare costs. The court attributed this to a misinterpretation of the earlier order and declined to hold Will in contempt. But the court did order Will to pay Branwen $270.35 within 30 days for his share of Zada's past due daycare expenses.

## B. Branwen's Post–Trial Motion To Modify Legal And Physical Custody.

Branwen filed a motion to modify legal and physical custody on January 27, 2009, approximately four months after the trial on legal custody. She supported her motion with three allegations of changed circumstances: (1) the cooperation and communication anticipated by the court had not occurred; (2) Will refused to abide by the court's orders; and (3) because she had graduated from college in May 2008 and was working conventional hours Monday through Friday, the existing schedule no longer allowed Branwen to have free time with Zada. Branwen's proposed modification included awarding her sole legal and primary physical custody of Zada, reducing Will's time with Zada to visitation every other weekend, half of the holidays, and a vacation period during the summer.

Will opposed the motion to modify custody, arguing: (1) Branwen's motion claimed a nominal change in circumstances, including a "unilateral" and "voluntar[y]" decision to matriculate and graduate from college, which did not rise to the level required for modification; and (2) Branwen's repeated use of the judicial system to try to obtain sole custody of their daughter was not in good faith. Will also asked the court to assess attorney's fees against Branwen for her January 2009 motion. Will alleged that an award of fees was necessary because "[w]ithout such sanction, the Court, counsel and [Will] may only expect another motion in a few weeks or at most, months' time."

The superior court denied Branwen's motion to modify physical and legal custody

without holding a hearing. In its February 19, 2009 order denying the motion, the court found "[Will's] arguments persuasive," and ordered Branwen to "reimburse [Will] full/partial attorney fees." Will's counsel was directed to submit an accounting of fees and costs.

### C. Branwen's First Motion For Reconsideration.

On February 23, 2009, Branwen filed a motion for reconsideration. The motion argued that the court ruled on the motion to modify custody before she had the opportunity to reply to Will's opposition.[2] Branwen filed a reply in support of her motion to modify custody at the same time. The court accepted Branwen's reply and gave Will a chance to file a response.

On March 10, 2009, Will responded to Branwen's reply. The response argued that Will was complying with court orders, that custody should not be modified based on Branwen's own "life choices," and that Branwen's reply "assert[ed] no new issues or arguments in any particular." After considering the motion papers, the court again denied Branwen's motion for modification. The court found "the affidavits of [Will] credible, the arguments of [Will's] Counsel persuasive and no significant change in circumstances warranting modification of the present custody order in the best interest of the child." The court confirmed its prior order awarding attorney's fees to Will and directed Will's counsel to submit an accounting of fees and costs to Branwen and the court.

### D. Branwen's Second Motion For Reconsideration.

Branwen filed a second motion for reconsideration almost two weeks later. It argued the court should have given her a hearing on her motion to modify and that the court erred by assessing fees against her. The superior court denied this motion as well, ruling "[a] voluntary decision by one parent to change [her] schedule is not grounds to

modify custody for the other parent." The court further ruled that Branwen's concerns about Will not following court orders would be better addressed in a motion to enforce or an order to show cause, which "might be warranted if the [c]ourt found [Will's] response unpersuasive." The court then wrote: "[g]iven the fairly extensive shared physical custody arrangement set by the [c]ourt, and the lack of any allegation those visits are not being complied with, even taking [Branwen's] affidavits as true would not warrant a change of custody." The order did not specify whether the court was referring to legal or physical custody; the parties understood the order to refer to both. We agree with the parties' interpretation.

As to attorney's fees, the superior court found Branwen's motions simply "a continuation of a dissatisfaction with shared custody," which was still the arrangement "in the best interests of the child." The court ordered Branwen to pay Will partial attorney's fees, but explained that the parties' relative financial resources was not the reason for the award. Rather, Branwen's use of "motion practice to attempt to control and abuse [Will]" was what led the court to assess fees. The court found that "[a]bsent some accountability for repeated motions raising the same issues that have been previously heard, this [abuse would] likely continue." The court ruled that Branwen's actions were neither in the best interests of the child nor in good faith.

Branwen appeals the court's denial of her motion to modify custody and subsequent motions for reconsideration, and the court's award of attorney's fees to Will.

## III. STANDARD OF REVIEW

■ We review de novo whether a moving party has made a prima facie showing sufficient to justify a custody modification hearing.[3]

■ An award of attorney's fees under AS 25.20.115 is subject to reversal only for

---

**2.** The superior court denied Branwen's motion to modify custody on February 19, 2009, one day before Branwen's reply was due.

**3.** *Maxwell v. Maxwell*, 37 P.3d 424, 425 (Alaska 2001) (quoting *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

abuse of discretion or if the court's factual findings supporting the award are clearly erroneous.[4] We use our independent judgment to determine whether the superior court applied the law correctly in awarding fees.[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Denying Branwen's Motion To Modify Joint Legal and Shared Physical Custody Without A Hearing.

■ Branwen filed a motion to modify legal and physical custody on January 27, 2009. The court denied this motion and declined to change its order in response to two subsequent motions for reconsideration. In its orders, the court lumped together Branwen's request to modify legal and physical custody, rather than explaining its reasons for denying modification of each type of custody. But these two types of custody must be analyzed separately;[6] as is true here, the comparative period used to analyze changed circumstances for one may not be the same as for the other.

■ A parent seeking a modification of legal custody must make a prima facie showing of substantially changed circumstances sufficient to justify a modification hearing.[7] The "change in circumstances" requirement is "intended to discourage continual relitigation of custody decisions, a policy motivated by the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare."[8] "For this reason, the change 'must be demonstrated relative to the facts and circumstances that

existed at the time of the prior custody order that the party seeks to modify.'"[9] A parent seeking to modify physical custody must also demonstrate that a substantial change in circumstances has taken place since the last custody order was entered.[10]

■ Here, legal custody was established by court order after the October 2008 trial. Branwen filed her motion to modify on January 27, 2009. Therefore, the correct comparison for determining whether there had been a substantial change in circumstances for legal custody purposes is a comparison of the circumstances as they existed in October 2008 to the circumstances as of January 27, 2009. Physical custody was agreed to by the parties in their 2007 settlement discussions, though the court memorialized the parties' physical custody schedule in February 2008. The correct comparison of circumstances for physical custody purposes is the circumstances as they existed in July 2007 and the circumstances as they existed when the January 27, 2009 motion was filed.

### 1. The parties' competing affidavits

■ In her motion to modify custody, Branwen alleged two circumstances that went to the heart of legal custody: (1) a failure of communication between the parties; and (2) Will's refusal to honor court orders regarding co-parenting counseling, use of email, and telephone access to Zada. Branwen also claimed a change in her post-graduation work schedule in support of modifying physical custody. In its February 19, 2009 order denying Branwen's motion to modify custody, the only explanation the superior court gave was that it found "[Will's] argu-

---

**4.** See *Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998) (citing *Nelson v. Jones*, 781 P.2d 964, 971 (Alaska 1989)).

**5.** See *Boone v. Gipson*, 920 P.2d 746, 748 (Alaska 1996).

**6.** See *D.J. v. P.C.*, 36 P.3d 663, 670 n. 26 (Alaska 2001) (" 'Legal custody' refers to the responsibility for making 'major decisions affecting the child's welfare' and is a status that may be held by a parent who does not have 'physical custody,' which refers to the responsibility for physical care and immediate supervision of the child." (quoting *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000))).

**7.** *Hunter v. Conwell*, 219 P.3d 191, 195–97 (Alaska 2009).

**8.** *Peterson v. Swarthout*, 214 P.3d 332, 340–41 (Alaska 2009) (internal citations and quotation marks omitted).

**9.** *Id.* (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

**10.** *Hunter*, 219 P.3d at 195–97; *see also Peterson*, 214 P.3d at 340–41.

ments persuasive." The court gave minimal further explanation when it issued its order on Branwen's motion for reconsideration, adding that it found "the affidavits of [Will] credible" and "no significant change in circumstances warranting modification of the present custody order." In its order on Branwen's second motion for reconsideration, the court explained that "[t]he ... issues raised by [Branwen] as to telephonic and e-mail contact and co-parenting classes go to enforcement of current [c]ourt orders." The superior court explained that the appropriate remedy for enforcement problems would be a motion to enforce or an order to show cause. But in the same sentence, the court wrote that these types of motions would be warranted if "the [c]ourt found [Will's] response unpersuasive." As explained, the court's original order denying the motion to modify made clear that the superior court found "[Will's] arguments persuasive."

Branwen argues that the superior court's statements, taken together, imply that "any motion to enforce would be fruitless." She also argues that the court attempted to "resolve factual issues by making credibility determinations based on the affidavits the parties filed, which is not permissible." We agree with Branwen that the superior court's decision is troubling on these grounds.

First, the court's order is problematic because it overlooks Branwen's contention that her motions appear to have been what motivated Will to comply with the court's orders, such as scheduling a counseling appointment for himself and a dentist appointment for Zada. There is at least some support for this contention: at the conclusion of the October 2008 trial, the superior court found Will failed to comply with a court order due to a misunderstanding of what daycare costs he was required to pay. It was Branwen's or-

der to show cause that led the court to clarify this requirement, and to enforce it.

The second reason the court's order is problematic is because the court weighed Will's credibility when determining whether a hearing was warranted on the motion to modify custody. In its order denying Branwen's motion to modify, the court wrote that it "finds [Will's] arguments persuasive" and, in its order on the motion for reconsideration, the court elaborated that it found "the affidavits of [Will] credible [and] the arguments of [Will's] Counsel persuasive."

Branwen argues the court should not have made credibility determinations based on the parties' affidavits. Will responds that "a court can deny a motion to modify custody or visitation, without holding a hearing, based solely on the pleadings or after considering material beyond the pleadings—e.g., affidavits." [11] But we held in *C.R.B. v. C.C.* that granting or denying a motion to modify custody without a hearing is akin to making a determination on summary judgment; [12] and we have cautioned that courts should not weigh witness credibility on summary judgment.[13]

Here, Will alleges that the superior court was justified in judging the affidavits' credibility because the court had "multiple, extended opportunities to not only review and assess Branwen's many affidavits, but also to view her conduct and demeanor and to assess her credibility in trial and in hearing after hearing." We have never directly addressed this issue, but other jurisdictions have recognized that a court's familiarity with a case can sometimes allow it to make credibility determinations without taking additional testimony.[14] There may be circumstances where a party's repetitious use of the judicial system over a short time period without new

**11.** *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998), overruled on other grounds by *Evans v. McTaggart*, 88 P.3d 1078 (Alaska 2004).

**12.** *Id.*

**13.** *Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002); *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1216 (Alaska 1991) ("Credibility is a factual issue ... properly determined by the factfinder at trial, not a matter of law determined by the court in sum-

mary judgment."). *But see Iverson v. Griffith*, 180 P.3d 943, 946 (Alaska 2008) ("[A] trial court is not required to grant a hearing ... if the allegations of changed circumstances are convincingly refuted by competent evidence." (quoting *Maxwell v. Maxwell*, 37 P.3d 424, 426 (Alaska 2001))).

**14.** *See, e.g., Burckett v. State*, 704 So.2d 1266, 1268 (La.App.1997).

allegations would allow a trial court to make a credibility determination on written filings, but this is not such a case. Here, the parties' affidavits contained directly conflicting information regarding the reasons for ongoing failures in communication and cooperation. Physical custody had not been addressed since July 2007, the court had never decided physical custody in a contested setting, and Branwen had filed only two motions to modify physical custody in the entire history of the case. Filing a second motion to modify does not constitute repetitious use of the judicial system such that Branwen should be denied her day in court. In fact, it appears that the only time Branwen testified before the superior court was at the October 2008 trial.[15] The October 2008 trial did not include arguments or evidence about modifying physical custody because the superior court had ruled that "evidence shall not be presented ... on modification of physical custody of the parties' minor child." Under these circumstances, the superior court's credibility determinations were premature.

■ Although we conclude that the superior court erred in its reasons for denying Branwen a hearing, our analysis does not end here. We review de novo whether a party has a made a prima facie showing sufficient to justify a modification hearing; in this case we independently conclude that Branwen failed to make a sufficient showing.

## 2. Branwen did not allege a sufficient change in circumstances to warrant a hearing on modifying joint legal custody.

■ When deciding whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances.[16] In so doing, we take the moving party's allegations as true.[17]

In support of her motion for sole legal custody, Branwen claimed that communication between the parties had not improved and that Will was failing to comply with court orders. Regarding the first allegation, we have held "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."[18] Here, the superior court's decision to award joint legal custody was based on an assumption that "once the litigation goes away there's a pretty good indicator that the parents are going to focus on the best interest of the child at that point in time, and hopefully put their personal conflicts aside." Branwen argues that the parties' communication did not improve after the October 2008 trial on legal custody, but the record reflects the parents were communicating, at least to the extent that they were able to facilitate shared physical custody by exchanging weekly, if not daily, emails.

Email communication between two parents may not be optimal, but the superior court specified that the parents were to use email, implying that this mode of communication was at least minimally functional for facilitating shared custody.[19] We have observed that "sustained noncooperation by one parent may constitute sufficiently changed circumstances to justify terminating joint legal custody,"[20] but less than four months had elapsed after the trial on legal custody and the parties were exchanging emails regularly. Under these circumstances, the "lack of communication and cooperation" alleged by Branwen does not rise to the level of "sus-

---

15. Branwen's prior motions were denied without a hearing and the 2007 settlement conferences were conducted by a different judge.

16. *Maxwell*, 37 P.3d at 425 (quoting *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

17. *C.R.B.*, 959 P.2d at 378.

18. *Jaymot v. Skillings–Donat*, 216 P.3d 534, 540 (Alaska 2009) (quoting *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991)).

19. *Cf. id.* (holding that shared legal custody was not in the child's best interest because the mother "refuses to speak with the father and fails to promote communication").

20. *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009) (internal citations and quotation marks omitted).

tained noncooperation" sufficient to justify modifying legal custody.[21]

Branwen also alleged that Will was not complying with court orders, an allegation that must receive serious consideration by the superior court. Here, the superior court issued an order notifying Branwen that the non-compliance she complained of would be better addressed as a motion to enforce or order to show cause, rather than a motion to modify custody. We have said "[w]here one party fails to comply with a court order, the appropriate use of judicial intervention is to seek an order directing the non-compliant party to comply."[22] This response to initial complaints of non-compliance with child custody orders has the advantage of providing a remedy without risking disruption to the child. The preference for motions seeking compliance over motions to modify custody stems from our "deep reluctance to shuttle children back and forth between parents."[23] Further, alleged violations of court custody orders do not necessarily constitute grounds for modification,[24] although they certainly can if the violations are continuous, repetitious, or egregious.

*Peterson v. Swarthout* proves a good example.[25] There, the mother filed a motion to modify legal custody based on the father's alleged violations of court orders three months after the court had entered an order on legal custody.[26] The alleged violations included: removing the child from counseling, failing to protect the child from being bitten by a three-year-old half-brother, failing to communicate, scheduling more time with the child on holidays and special days than allowed by the custody order, failing to schedule an annual physical checkup for the child, and questioning the child about time spent with the other parent.[27] We held that these instances of non-compliance, occurring over a three-month period, "did not effect a 'significant or substantial' change in circumstances," although they could warrant an order forcing compliance with the custody arrangement.[28] Branwen alleged that Will violated the court order by failing to: (1) email effectively; (2) schedule counseling appointments; (3) allow Branwen telephonic contact with Zada when Zada was in Will's custody;[29] and (4) pay his share of the daycare bills. While continual violation of these orders may warrant a hearing—or even a modification of legal custody—in the future, we conclude that these allegations had not yet risen to the level of a substantial change in circumstances as of the time Branwen filed her motion to modify legal custody. We affirm the superior court's ruling that Branwen was not entitled to a hearing on the motion to modify joint legal custody.

Our decision today does not mean that Branwen's allegations are insignificant; we only decide that the alleged violations did not warrant a hearing on modification of joint legal custody four months after the order was established. If Branwen alleges that Will continues to demonstrate non-compliance over a more extended period of time, or in additional ways, a future motion to modify may allege a sufficient change in circumstances to warrant a hearing.[30]

---

21. *Id.*

22. *Id.* at 341 n. 28 (citing *Vachon v. Pugliese,* 931 P.2d 371, 378–79 (Alaska 1996)).

23. *Harrington v. Jordan,* 984 P.2d 1, 4 (Alaska 1999) (quoting *C.R.B. v. C.C.,* 959 P.2d 375, 381 (Alaska 1998)).

24. *Peterson,* 214 P.3d at 341 n. 28 (citing *Vachon,* 931 P.2d at 378–79).

25. *Id.* at 332.

26. *Id.* at 340.

27. *Id.*

28. *Id.* at 341 n. 28.

29. In support of this allegation, Branwen cites an instance when she could not contact Zada, who was with Will for a week over the Christmas holiday. Will admits that Zada did not talk to Branwen for four days, but claims that it was because he accidentally washed his cell phone in the washing machine.

30. *See, e.g., Peterson,* 214 P.3d at 341 n. 30.

**3. Branwen did not allege a sufficient change in circumstances to warrant a hearing on modifying shared physical custody.**

**a. One parent's unilateral change can warrant a hearing on a motion to modify shared physical custody; a parent does not need to show violation of a custody order to receive a hearing.**

Branwen also contends that she made a prima facie case sufficient to warrant a hearing on her motion to modify shared physical custody. In support of this motion, Branwen alleged that since the time of the last physical custody order she graduated from college, gained full-time employment, and started evening classes to work toward her master's degree. Branwen claimed that "[a]t the time of the [stipulated 2007 custody] agreement, Will worked a Monday through Friday schedule, while [she] worked weekends and went to school during the week." Because of her changed circumstances, Branwen was working Monday through Friday and taking classes two workday evenings per week when she moved to modify custody. She claimed that the time she had to spend with Zada had been substantially reduced as a result of these changes.

The superior court rejected Branwen's claim that a substantial change in circumstances had occurred with respect to physical custody and it made this ruling without holding a hearing. The court ruled that "[a] voluntary decision by one parent to change their schedule is not grounds to modify custody for the other parent." It added that "[g]iven the fairly extensive shared physical custody arrangement set by the [c]ourt, and the lack of any allegation those visits are not being complied with, even taking [Branwen's] affidavits as true would not warrant a change of custody."

 Branwen contends that her allegations of changed circumstances warranted a hearing. She claims that the superior court's conclusion that "[a] voluntary decision by one parent to change their schedule is not grounds to modify custody for the other parent" is unsupported by law. We agree with Branwen that the superior court's analysis was flawed in two respects. First, the court's ruling that a parent's unilateral decision to change his or her schedule cannot warrant modification is not consistent with our case law. For example, in *Iverson v. Griffith* we held that a hearing to modify custody was necessary because the father had new employment that required him to be away from home for two-week periods.[31] This was certainly a "unilateral" change in the sense that it did not involve the mother, and nothing suggested it was an involuntary change in employment. To the contrary, decisions to accept new employment or to move one's residence typically are unilateral and voluntary, and our case law is clear that these changes can form the basis for custody modification.[32] The key inquiry is whether the change is significant enough to warrant the disruption inherent in changing a child's custody schedule or routine,[33] not whether the changed circumstance is "unilateral" or "voluntary."

 Second, the superior court's order might be interpreted as suggesting that Branwen was not entitled to a custody modification because she did not allege that Will was not complying with the court's physical custody schedule. The court wrote: "Given the fairly extensive shared physical custody arrangement set by the [c]ourt, and *the lack*

---

**31.** *Iverson v. Griffith*, 180 P.3d 943, 946 (Alaska 2008).

**32.** *See, e.g., Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001) ("[A] custodial parent's decision to move out-of-state with the children amounts to a substantial change in circumstances as a matter of law." (internal quotation marks and citations omitted)).

**33.** *Id.* at 5–6, 10; *see also Peterson*, 214 P.3d at 340–41 (There is a "judicial assumption that fi-nality and certainty in custody matters are critical to the child's emotional welfare." (internal quotation marks and citations omitted)); *Harrington v. Jordan*, 984 P.2d 1, 4 (Alaska 1999) ("[C]ommentators have noted the counterproductive effect of unnecessary litigation on all parties, including children." (internal citation omitted)); *cf. Melendrez v. Melendrez*, 143 P.3d 957, 962–63 (Alaska 2006) (discussing a child's need for stability and continuity in custody arrangements).

*of any allegation those visits are not being complied with,* even taking [Branwen's] affidavits as true would not warrant a change of custody." We have never held that one party must be in violation of the physical custody order for the court to modify legal or physical custody. Nor have we held that compliance with an existing physical custody schedule is dispositive of the question whether there has been a change in circumstances.

■ The superior court erred when it ruled that a voluntary change in employment cannot be the basis of finding a substantial change in circumstances and that Branwen was not entitled to a hearing because Will was complying with the physical custody order, but because we independently determine that Branwen was not entitled to a hearing on her motion to modify shared physical custody, this error was harmless.

**b. Branwen's changed schedule did not warrant a hearing on modifying the percentage of physical custody time each parent receives.**

■ To determine whether Branwen was entitled to a hearing on modification of shared physical custody, we compare the circumstances as they existed at the time of the last order on physical custody to the circumstances Branwen alleged when she filed her motion to modify custody in January 2009.[34]

Branwen's primary allegation was that her transition from college into the full-time workforce and master's degree program severely restricted the amount of time she had with Zada. When the parties agreed to physical custody in 2007, Branwen was a full-time student with a flexible schedule during the week and Will worked a conventional Monday through Friday schedule with flexible time on weekends. The parties agreed to allocate most of Zada's weekend time to Will and most of her weekday time to Branwen. By the time Branwen filed her motion to modify physical custody in January 2009,

both parties were working typical work-week schedules and Branwen was taking classes two evenings during the week. Branwen argued that this change affected how much time Zada was able to spend with Branwen, and that "[i]t would be much better for [Zada] if she spent a more equal share of her free time with each parent so she can have family activities with each of [them]."

But Branwen's January 27, 2009 motion sought more than a reallocation of Zada's weekend time. The motion asked the superior court to grant her sole legal custody and primary physical custody, with a dramatically reduced physical custody schedule for Will. We agree with the superior court that no hearing on this motion was necessary because, taking her allegations as true, Branwen did not make a prima facie showing that her post-graduation schedule justified a change to primary physical custody.

■ We have said that a lesser showing is required for a "change in circumstances" determination when a parent seeks to modify visitation rather than custody.[35] Here, if Branwen had sought modification of the custody *schedule* only, and not modification of the percentage of time each parent had with the child, a lesser change in circumstances would have been required to entitle her to a hearing. A similar situation was presented in *Havel v. Havel,* where the superior court awarded each parent 50% custody, and left it to the parents to determine a custody schedule.[36] When the parties could not agree to a schedule, the superior court imposed one, but in the process the court changed the percentage allocation from 50/50 to 60/40.[37] We upheld the decision to set a schedule, but also held it was an abuse of discretion to change the percentage of time each parent had with the child because the superior court made no findings explaining why modifying the custody arrangement was in the child's best inter-

34. *Peterson,* 214 P.3d at 340–41 (quoting *Jenkins v. Handel,* 10 P.3d 586, 589 (Alaska 2000)).

35. *Havel v. Havel,* 216 P.3d 1148, 1151 n. 6 (Alaska 2009). In the past this court has used the term "visitation" to mean "custody sched-

ule" in the context of a shared physical custody arrangement. *See, e.g., id.* at 1151–53.

36. *Id.* at 1150.

37. *Id.* at 1153.

ests.[38] Our decision reflected the higher showing required to modify the percentage of time each parent receives in a shared custody situation, as compared to the lesser standard required for modifying a custody schedule.

Branwen's January 2009 motion to modify physical custody specifically requested that the court "grant her physical custody of [Zada], with Will to have visitation every other weekend and half the holidays, and a vacation period during the summer." The parties' prior agreement gave Will roughly 50% physical custody of Zada. On its face, Branwen's request sought primary physical custody and a reduction of the percentage of time Will had physical custody of Zada, not just the schedule when he had custody. Branwen's motion did not mention or suggest simply modifying the existing custody schedule to more equally allocate weekend time. To the contrary, Branwen's request sought primary physical custody, with Will's time being reduced to visitation every other weekend.

 Branwen had experienced family law counsel representing her. It is possible Branwen only hoped to gain a more equal allocation of weekend time, but we cannot say the superior court erred by failing to speculate as to what relief she sought; the court was obliged to rule only on the relief Branwen requested.[39] Further, Branwen's

briefing before this court does not allege that the superior court misunderstood her request; rather, her appeal focuses entirely on whether she has met the requisite threshold for a hearing on modifying shared physical custody. The cases she cites are all instances of parents seeking to change the amount of time each parent had custody of the child, not just modification of the custody schedule.[40] An appellant must at least raise an issue before our court to secure review.[41] We therefore affirm the superior court's denial of Branwen's motion to modify shared physical custody without a hearing.[42]

## B. The Award Of Fees Was An Abuse Of Discretion.

The superior court awarded fees to Will because it found that Branwen was "using motion practice to attempt to control and abuse [Will]. Absent some accountability for repeated motions raising the same issues that have been previously heard, this will likely continue."

 There are three types of attorney's fee standards germane to child support and custody cases: (1) initial custody and child support determinations (the "divorce exception to Rule 82"); (2) postjudgment child support modification and enforcement proceedings (Rule 82); and (3) proceedings to modify custody/visitation (AS 25.20.115).[43]

---

38. *Id.* at 1151–53.

39. *Cf.* Alaska R. Civ. P. 7. ("An application to the court for an order . . . shall set forth the relief or order sought.").

40. *See Hunter v. Conwell*, 219 P.3d 191, 192–94 (Alaska 2009) (mother sought primary physical custody when father had primary physical custody); *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008) (mother sought shared physical custody when father had primary physical custody); *Barile v. Barile*, 179 P.3d 944, 945 (Alaska 2008) (mother sought primary physical custody when parents had shared physical custody).

41. *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 145–46 (Alaska 2004) (noting that, aside from plain error, issues neither argued before trial court nor included in opening brief before this court "[are] deemed abandoned") (citing *In the Matter of H.C.*, 956 P.2d 477, 480 n. 7 (Alaska 1998)); *see also Int'l Seafoods of Alaska, Inc. v. Bissonette*, 146 P.3d 561, 569 (Alaska 2006)

(deeming issue waived for failure to adequately brief point before this court).

42. Nothing in this decision should be read to suggest that future motions by Branwen will necessarily fail or succeed; we simply hold that Branwen's changed schedule did not warrant modifying the percentage of time each parent has physical custody of Zada. If Branwen believes the schedule for sharing 50/50 custody should be adjusted based on her changed work schedule, she may file a motion to modify the custody *schedule.*

43. *See Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998) (proceedings to modify custody/visitation); *Bergstrom v. Lindback*, 779 P.2d 1235, 1238 (Alaska 1989) (initial custody and support determination); and *Patch v. Patch*, 760 P.2d 526, 531 (Alaska 1988) (postjudgment child support modification and enforcement proceedings). Because Branwen's motion falls into the category of "proceedings to modify custody/visitation," attorney's fees are governed by AS 25.20.115.

Although the superior court never explicitly stated the authority it relied upon to award fees, we assume it was AS 25.20.115.[44] That statute provides:

> In an action to modify ... an order providing for custody of a child ... the court may, upon request of a party, award attorney fees and costs of the action. In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith.

### 1. Alaska Statute 25.20.115 requires findings on the parties' relative financial resources and good faith.

We have previously held that "in making an award of attorney's fees and costs under AS 25.20.115, a court must make explicit findings as to the parties' relative financial resources and whether the parties acted in good faith." [45] The parties' relative financial resources do not need to take primacy over the presence or absence of good faith, but AS 25.20.115 still requires the court to make findings on both factors.[46] Regarding relative financial resources the superior court explained:

> Although the court is unaware as to whether Plaintiff is paying for the legal services she is receiving from her mother's law firm, relative financial resources was not the driving factor in awarding Defendant attorney's fees.... The relative resources of the parties is not controlling under these circumstances.

In other words, the superior court made clear that it did not know the parties' relative financial resources, nor did it take these resources into account, when it awarded fees.

Branwen argues that the superior court was required to consider her relative financial resources before awarding fees against her. Will argues that under *Rodvik*

*v. Rodvik*[47] a superior court may make an implied finding regarding the parties' relative resources by considering the record itself. Will's argument is unpersuasive for two reasons. First, *Rodvik* concerned the award of fees under AS 25.24.140—a statute that guides fees in divorce proceedings, not custody modification disputes.[48] Second, there is no basis for our court to conclude that the superior court made an implicit finding regarding the parties' relative financial resources; to the contrary, it appears the superior court could not have done so because the record does not contain information regarding Branwen's financial status. We conclude that *Rodvik* is not controlling, and that AS 25.20.115 required the superior court to consider and make explicit findings about the parties' relative financial resources before awarding fees. The court's failure to do so was error. On remand, the superior court must make explicit findings about the parties' relative financial resources and how this influences its fee award.

### 2. It was error to expand the scope of the fee award without notice.

A trial court's discretion in awarding attorney's fees is broad, but we will find an abuse of discretion if the award is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive." [49]

In its original order awarding Will attorney's fees, the superior court directed Will's counsel to "submit an accounting of fees and costs to respond to [Branwen's] motion [to modify custody]." The court limited its award to the fees and costs incurred in responding to the motion Branwen filed on January 27, 2009. But, as Branwen points out, the court ultimately approved Will's attorney's fee and cost accounting, which included fees incurred between the October 2008 trial and the January 2009 motion. The court implicitly expanded its award to include

---

**44.** The parties briefed and argued the fee award under this statute.

**45.** *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994).

**46.** *Id.* at 985–86.

**47.** 151 P.3d 338, 352 (Alaska 2006).

**48.** A court's fee analysis under AS 25.20.115 is different than that under AS 25.24.140. *See S.L.*, 883 P.2d at 985–86.

**49.** *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (citations omitted).

fees incurred in all post-trial briefs, and it did so without giving notice of its intent or providing Branwen an opportunity to address the expanded scope of fees. This was an abuse of discretion and we must therefore reverse the award of fees and costs.[50]

## V. CONCLUSION

For the reasons discussed above, we AFFIRM the superior court's denial of Branwen's motion to modify legal and physical custody without a hearing. We VACATE the fee award and REMAND to the superior court for further proceedings consistent with this opinion.

FABE, Justice, dissenting.

FABE, Justice, dissenting.

Today the court affirms the superior court's decision that Branwen was not entitled to a hearing on her motion to modify custody. I agree with the court that there was no need for a hearing regarding modification of legal custody. But because Branwen did show a sufficient change of circumstances based on changes in her work and school schedule, I would remand the case for a hearing and determination of whether there should be modification of the parties' shared physical custody schedule, also referred to as the visitation schedule.

Branwen requested modification of both legal and physical custody based on three alleged changed circumstances. Two of her allegations were related to Will's conduct. But apart from her allegations regarding Will's conduct, Branwen argued that the current visitation schedule had become "even more problematic because of [her] work and school schedule." Branwen noted that the current schedule allowed her only one weekend with Zada each month. She explained

that the parties had agreed to this schedule at a time when she was still in school and worked on weekends, but that because she had changed to a normal weekly work schedule, "[t]here is no longer any reason why Will should have more non-work time with [Zada] than her mother should." Branwen added that she "now has classes for her Master's degree on two of her scarce evenings with [Zada]" and that she thought it "highly unlikely" that Will would agree to change scheduled evenings to allow Branwen an additional "free" evening with Zada. Finally, Branwen noted that because "Will takes no responsibility for things like the dental appointments during his time with [Zada,] [a]ll the mundane, necessary tasks must be done on Branwen's time."

The trial court expressly stated that it was denying Branwen a hearing on the issue of physical custody based on its view that Branwen's unilateral job and school schedule changes could not provide support for a change in physical custody. As the court explains, this view was erroneous because "our case law is clear that [unilateral and voluntary] changes can form the basis for custody modification."[1] But the court excuses the trial court's error as harmless because Branwen's motion "sought more than a reallocation of ... time" and Branwen did not show that her changed schedule justified a modification of physical custody.[2]

It is true that Branwen requested a change in the physical custody arrangement that would have given her a larger percentage of time with Zada than Will; such a request would require a heightened changed circumstances burden.[3] But physical custody has two components—(1) the allocation of the percentage of time that each parent has custody of the child, and (2) the schedule of where the child resides at a particular time.[4]

---

**50.** The expansion in the scope of the fee award raises due process concerns because Branwen did not have an opportunity to be heard on this issue of consequence. *See Smith v. Groleske,* 196 P.3d 1102, 1106 (Alaska 2008).

**1.** Op. at 407–08.

**2.** Op. at 407–08.

**3.** The court allows that "if Branwen had sought modification of the custody *schedule* only ... a

lesser change in circumstances would have been required to entitle her to a hearing." Op. at 408. *See also Havel v. Havel,* 216 P.3d 1148, 1151 n. 6 (Alaska 2009).

**4.** I recognize that Branwen requested modification of both of these components, and I do not believe that Branwen "only hoped to gain a more equal allocation of weekend time." Op. at 409.

Here, even if Branwen's allegations as a whole were not sufficient to justify a change in the percentage of time she had physical custody, the separate question whether Branwen's changed schedule justified a change in how the shared custody time was scheduled, in other words, a change in the visitation schedule, remained, and that discrete issue merited a hearing.[5] Put another way, the arguments in Branwen's motion established her entitlement to a hearing and review of the visitation schedule, even if the percentages remained even and physical custody remained shared. Because it is the child's best interests that are at stake, I do not favor the court's technical reading of the motion and implied conclusion that Branwen was required to frame an express stand-alone or alternative argument that a new visitation schedule was necessary.[6]

Because the basis for the parties' original physical custody schedule was the flexible weekday schedule Branwen had as a student, her schedule change to full-time employment was a sufficient change of circumstances to warrant a hearing on her motion to modify physical custody to the extent she requested a change in the arrangement of shared physical custody. And Branwen's express argument that her revised work and school schedule, which left her with only one weekend a month with Zada, caused the custody arrangement to be "even more problematic" placed the issue of the visitation schedule squarely before the superior court. I would remand the case for a hearing on the parties' visitation schedule and I therefore respectfully dissent.

---

But in my view a party is not required to choose between these two forms of relief in requesting modification of physical custody.

5. Even if a trial court denies a parent's motion to modify legal and physical custody based on

changed circumstances, the trial court may modify the parents' visitation schedule to accommodate those changed circumstances. *See Pearson v. Pearson*, 5 P.3d 239, 242 (Alaska 2000).

