NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMYE WALLACE, | ) | |
| | ) | Supreme Court No. S-19241 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-10801 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JOHN O'HARA, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2104 – August 27, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Michael Gershel, Law Office of Michael Gershel, Anchorage, for Appellant. No appearance by Appellee John O'Hara.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.   INTRODUCTION

Two parents agreed to share physical custody of their daughter on an alternating weekly basis. A dispute arose over a provision in the agreement pertaining to travel with the child. The parents filed competing motions with the superior court, and each moved for an award of attorney's fees and costs. After denying the mother's motions, the court summarily awarded the father attorney's fees and costs without

---

\*      Entered under Alaska Appellate Rule 214.

stating the legal basis or making factual findings. Because the superior court failed to make either the factual findings or legal conclusions necessary to support its award of attorney's fees, we vacate the court's award and remand for further proceedings.

## II.     FACTS AND PROCEEDINGS

Amye Wallace and John O'Hara are the parents of a child born in 2014. The couple separated in 2016 and commenced child custody proceedings shortly thereafter. The superior court approved the parties' agreement for shared legal and physical custody. The parties subsequently agreed to, and the court approved, a revised agreement in December 2020. Under the revised agreement, the parents shared physical custody on an alternating weekly schedule.

The revised agreement also contained a travel provision. Each parent was allowed to take up to seven days of the other parent's custodial time once per year to allow for 14 days of extended travel with the child. The other parent was entitled to a make-up week for the lost custodial time either directly prior to or directly following the 14-day travel period.

An ambiguity in the travel provision led to two disputes. First, in February 2023 Wallace sought the court's assistance to enforce the agreement, arguing that O'Hara was improperly denying her request to take a vacation with the child. The court denied Wallace's motion, explaining that the parents had resolved the dispute after the filing of the motion. Second, in March 2024 Wallace filed another motion to enforce, this time arguing that O'Hara's planned make-up custody week to accommodate her vacation with the child violated the agreement. Wallace argued that the agreement was not intended to allow either parent to have three consecutive weeks of custody.

O'Hara opposed Wallace's motion to enforce, arguing that his choice of the make-up week was consistent with the agreement and would result in each parent having equal time with the child. Both parties also filed motions to modify the wording of the agreement to align with their respective interpretations.

While the motions were pending, O'Hara took custody of the child for three consecutive weeks. Wallace called the Anchorage Police Department because she believed that O'Hara was violating the agreement. The police questioned O'Hara and eventually left without removing the child from his care. Wallace then filed a motion for statutory damages and attorney's fees.[1] O'Hara filed a cross motion for attorney's fees and costs under AS 25.20.115[2] or, in the alternative, Alaska Civil Rule 77(j).[3] He argued that attorney's fees were warranted because Wallace acted in bad faith by filing duplicative motions and calling the police on O'Hara.

In July 2024 the superior court issued an omnibus order denying Wallace's motions and, for the most part, granting O'Hara's motions. The court found that the language of the parents' agreement was internally inconsistent. On one hand, it stated that the travel provision within the agreement "would mean that each parent has [the child] for two weeks at a time." But if each parent were allowed a one-way switch of custody time as contemplated by the provision, the result would generally be that each parent has three weeks of consecutive custodial time unless the weekly custody calendar were flipped. The court noted that Wallace herself took advantage of the three-week custody option and only objected when O'Hara was to receive the same amount of time. The court also found that O'Hara did not intentionally withhold custody; he followed his reasonable interpretation of the parenting plan.

---

[1] *See* AS 25.20.140 (allowing damages action when court finds that a party fails, "wilfully and without just excuse, to permit visitation with the child for substantially the length of time and substantially in the same manner as specified in the court order").

[2] *See* AS 25.20.115 (allowing court to award attorney's fees and costs in an action to enforce a child custody order).

[3] *See* Alaska R. Civ. P. 77(j) (granting court discretion to impose attorney's fees and costs on counsel presenting frivolous or unnecessary motions which unduly delay proceeding).

Agreeing with O'Hara's interpretation of the travel provision, the court modified the provision by removing the language that limited travel time to two consecutive weeks. The court then summarily granted O'Hara's motion for attorney's fees without stating a legal basis or making factual findings in support of its decision.

Wallace filed a motion for reconsideration of the attorney's fees award. She argued that the superior court could not award O'Hara attorney's fees under AS 25.20.115 without making explicit findings on "the relative financial resources of the parties" and the absence of "good faith." O'Hara opposed, arguing that the court's order was supported by a stipulation the parties made in 2017 that they were both in a similar financial position, and that Wallace had acted in bad faith by filing duplicative motions and calling the police. O'Hara argued in the alternative that Rule 77(j) provided a basis for the court's order because Wallace filed unnecessary motions that unduly delayed the course of proceedings. The court denied Wallace's motion for reconsideration and entered judgment for attorney's fees and costs against Wallace without making additional findings.

## III. STANDARD OF REVIEW

"An award of attorney's fees under AS 25.20.115 is subject to reversal only for abuse of discretion or if the court's factual findings supporting the award are clearly erroneous."[4] "We use our independent judgment to determine whether the superior court applied the law correctly in awarding fees,"[5] including awards under Rule 77(j).[6]

---

[4] *Collier v. Harris*, 261 P.3d 397, 402-03 (Alaska 2011).

[5] *Id.* at 403.

[6] *See Hartland v. Hartland*, 777 P.2d 636, 649 (Alaska 1989) (reviewing de novo whether superior court was within its authority to award attorney's fees under Rule 77(l) (current Rule 77(j))); *see also Kozevnikoff v. Tanana Village Council*, 89 P.3d 757, 759 (Alaska 2004) ("When a review of an award of attorney's fees and costs

## IV. DISCUSSION

There are two bases on which O'Hara moved for attorney's fees and costs before the superior court: AS 25.20.115 and Alaska Civil Rule 77(j). The court granted his request. But, as O'Hara has acknowledged, the court never explicitly stated the authority on which it issued the award. On appeal, Wallace argues that the award of attorney's fees and costs to O'Hara cannot be affirmed under either ground because the court's factual findings were insufficient. We agree.

### A. It Was Error To Award Attorney's Fees Without Making The Explicit Factual Findings Required By AS 25.20.115.

Alaska Statute 25.20.115 applies in actions to "modify, vacate, or enforce" a child custody order. This statute provides that:

> the court may, upon request of a party, award attorney fees and costs of the action. In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith.[7]

Our precedent clearly establishes that before a court may award attorney's fees and costs under AS 25.20.115, the court "must make *explicit findings* as to the parties' relative financial resources and whether the parties acted in good faith."[8] "The parties' relative financial resources do not need to take primacy over the presence or absence of good faith, but AS 25.20.115 still requires the court to make findings on *both* factors."[9]

We are unable to affirm the award of attorney's fees under AS 25.20.115 because the superior court did not make explicit findings as to either of the statutorily

---

requires an interpretation of the Alaska Civil Rules, we apply our independent judgment.").

[7]     AS 25.20.115.

[8]     *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994) (emphasis added); *see also Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998).

[9]     *Collier*, 261 P.3d at 410 (emphasis added).

required factors. The court did, however, make findings that might implicitly suggest that O'Hara acted in good faith while Wallace did not. For example, the court found that Wallace "herself took advantage of the three-week custody option and only objected when [O'Hara] was to receive the same amount of custody time." The court also found that O'Hara "was not intentionally withholding [the child], but following the parenting agreement as he reasonably interpreted it." But implicit findings regarding bad faith are not sufficient to support an award of attorney's fees under AS 25.20.115.

Moreover, even if the court had explicitly found that Wallace did not act in good faith, the court did not make any implicit or explicit findings regarding the relative financial resources of the parties. Indeed, it could not have considered the parties' relative financial resources because that information was not before the court.[10] O'Hara admitted that the parties had not recently exchanged financial information. And although the parties stipulated in 2017 that they had the same amount of income, that stipulation is not a reliable indicator of their relative financial resources seven years later.

**B.     We Are Unable To Affirm The Award Of Attorney's Fees And Costs Under Alaska Civil Rule 77(j).**

In his motion for attorney's fees and costs, O'Hara argued that Wallace's motions were "frivolous, duplicative, and unnecessary," entitling him to attorney's fees under Rule 77(j). Rule 77(j) provides:

> The presentation to the court of frivolous or unnecessary motions or frivolous or unnecessary opposition to motions, which unduly delay the course of the action proceeding . . . subjects counsel presenting or filing such, at the discretion of the court, to imposition of costs and attorney's fees to the opposing party, to be fixed by the court and paid to the clerk

---

[10]     *Id.* ("Second, there is no basis for our court to conclude that the superior court made an implicit finding regarding the parties' relative financial resources; to the contrary, it appears the superior court could not have done so because the record does not contain information regarding Branwen's financial status.").

of court, and any other sanctions, which may be authorized by rule or law.[11]

We are unable to affirm the superior court's award of attorney's fees and costs under Rule 77(j) for several reasons.

First, affirming the award under Rule 77(j) would be inconsistent with the text of the rule. Rule 77(j) subjects *counsel* to imposition of attorney's fees and costs, not parties.[12] But here, the superior court imposed attorney's fees and costs against Wallace herself. Thus, as a matter of law, it would be improper to award attorney's fees and costs against Wallace under Rule 77(j).

Second, even assuming the award was intended to be directed against Wallace's attorney, the superior court failed to make any factual findings that would support such an award. Rule 77(j) permits the court to impose attorney's fees and costs against an attorney who makes "frivolous or unnecessary motions" that "unduly delay" the proceedings.[13] Neither the superior court's factual findings nor the record suggest that Wallace's motions were either frivolous or unnecessary or caused undue delay. Notably, the court found that the travel provision at issue "contradicts itself," suggesting that both parties' motions to modify the wording of the parenting plan were reasonable and not frivolous or unnecessary to resolve the dispute.

It is also not clear that Wallace's motions actually caused any delay of the proceedings. Wallace moved to modify the wording of the parties' agreement and requested statutory damages and attorney's fees while several of O'Hara's motions were outstanding. The court addressed all the motions in a single omnibus order

---

**11** Alaska R. Civ. P. 77(j).

**12** *Pennington v. Hanna Auto Wash, Inc.*, No. S-7660, 1997 WL 33812771, at *2 n.2 (Alaska Oct. 29, 1997) ("[Rule 77(j)] subjects *counsel*, not parties, to the imposition of fees or sanctions for presenting frivolous motions." (emphasis added)).

**13** Alaska R. Civ. P. 77(j).

approximately one month later.  Thus, even assuming the award was made against Wallace's attorney, we are unable to affirm the order under Rule 77(j).

**V.      CONCLUSION**

The superior court's decision is VACATED and the case is REMANDED for further proceedings consistent with this opinion.