**Bobbie Ann HUNTER, Appellant,**

v.

**Shaun T. CONWELL, Appellee.**

No. S–13336.

Supreme Court of Alaska.

Nov. 13, 2009.

---

**27.** *Id.*

**28.** *Id.*

**29.** *Id.*

Bobbie A. Hunter, pro se, Fairbanks, Appellant.

Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellee.

Before: CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Bobbie Ann Hunter and Shaun Conwell are the parents of two boys. After their relationship ended, Conwell filed a complaint for custody. Hunter received the complaint but did not respond. Conwell filed an application for entry of default and requested default judgment. After a hearing at which Conwell was present and Hunter was not, the superior court granted Conwell sole legal and primary physical custody of the boys. Almost two years later, Hunter filed a pro se motion to modify custody. The superior court denied the motion without holding a hearing because it found Hunter's allegations insufficient to constitute a substantial change in circumstances. Hunter filed a motion for reconsideration, which the superior court also denied, although it entered an order requiring Conwell to comply with a telephonic visitation schedule. Hunter appeals. We reject her arguments regarding the initial custody determination as time-barred, reverse the superior court's denial of her motion for modification, and remand for a hearing on that issue.

## II. FACTS AND PROCEEDINGS

Bobbie Ann Hunter and Shaun Conwell have two sons together. The couple never married but they lived together for approximately six years. Their relationship ended in early 2006 and at that point the parties began living in different communities; Conwell lived in Kotzebue, Hunter lived in Fairbanks, and the boys moved between the two homes.

On June 19, 2006, Conwell filed a complaint requesting sole legal and primary physical custody of the boys. A state trooper served a summons, the custody complaint and an "answer packet for answering a complaint," on Hunter on June 20, 2006. Hunter did not respond. On August 18, 2006, Con-

well filed an application for the entry of default and default judgment pursuant to Alaska Civil Rule 55. The clerk entered default that day and scheduled a hearing on the request for default judgment.

A default custody hearing took place in the superior court on August 24, 2006. Conwell was present; Hunter was not. The court asked Conwell why he was seeking sole legal custody, and Conwell responded that his concern was "the safety of my kids." While staying with Hunter, he said, one of the boys suffered a dog bite and was injured on a ride at a fair. Conwell expressed concern that Hunter "can't really handle" the boys in public. Conwell further testified that since the couple stopped living together, Conwell had custody of the boys during the school year and Hunter had custody over the summer. When the court asked Conwell why Hunter did not respond to his complaint, Conwell testified that Hunter did not make time for paperwork because she worked at night and cared for the children, or slept, during the day. Conwell proposed making official the arrangement that he would have physical custody of the boys during the school year. The court said "there needs to be a child support order entered" and asked Conwell what Hunter's income was; Conwell did not know but guessed approximately $4,500 per month based on his knowledge of her income while the two were living together. Conwell said that he believed he and Hunter could work out a visitation schedule and that he expected the boys would live with Hunter during the summer. The court asked if Conwell believed this arrangement was in the best interests of the children, and Conwell replied affirmatively. The court then stated on the record:

> Mr. Conwell has filed a complaint for custody. Ms. Hunter was served and has not filed an answer. Legal custody of the children is awarded to the plaintiff, Mr. Conwell. Primary physical custody is awarded to Shaun T. Conwell. The visitation schedule for these children will be as follows: reasonable visitation, but Ms. Hunter shall have the children two weeks after school is out and return the children two weeks before school resumes.

Based on Conwell's estimate, the court imputed $4,500 of income per month to Hunter and calculated child support based on that figure. In closing, the court said that "[b]ased on the testimony of Mr. Conwell, I've approved the orders that are necessary; they're not final until I get—sign the child support order, so let's get that done today." The court entered a written order consistent with its statements on the record, along with a child support order requiring Hunter to pay $953 per month to Conwell.

In August 2007 Child Support Services Division (CSSD) filed a motion to modify the existing child support order based on documentation Hunter provided about her income. CSSD requested that Hunter's monthly payments be reduced from $953 to $401. Conwell opposed the motion but the superior court granted it on September 6, 2007, decreasing Hunter's monthly support obligation to $401.

On July 7, 2008, Hunter filed a pro se motion seeking modification of the custody order. She requested a hearing on her motion. Hunter argued that modification was appropriate because it "is in the best interest of the children, and a substantial change in circumstances has occurred." She made several factual allegations: (1) over the telephone, she heard Conwell's live-in girlfriend "screaming" at the younger son, and she was sufficiently concerned to call the Kotzebue police to ask that they check on the situation; (2) Conwell frequently did not answer the phone when Hunter called, and he changed his phone number twice; (3) the older son asked Hunter whether Conwell's girlfriend was his mother; (4) Conwell travels for work, causing him to be away from the children for "several weeks at a time"; (5) Conwell "is attempting to alienate [Hunter's] children against their mother"; (6) Hunter has and will continue to foster Conwell's relationship with the children; (7) Hunter had custody of the boys before they traveled to Kotzebue to be with their father while their grandfather was dying, and when she went to Kotzebue to retrieve them, she was served with papers regarding the custody case; Hunter "was assured by [Conwell] he would let her know when the hearing was to be held," but "[h]e

never did so" and Conwell received custody by default; (8) Hunter believed Conwell was "neglecting proper parental guidance" and allowing the boys to misbehave in public; (9) "[b]oth children have extreme anger problems"; (10) Conwell delayed permitting the boys to receive counseling and did not renew their Denali Kid Care health care benefits, demonstrating a "lack of interest in the children's emotional and physical needs." Hunter requested primary legal and physical custody.

Conwell opposed Hunter's motion. He asserted that Hunter's factual claims were insufficient to meet her burden of showing that there had been a substantial change in circumstances since the default custody order was entered. Regarding Conwell's travel schedule, Conwell contended that he "is employed in Kotzebue and works a standard schedule" and that "[w]hen he is not home with the boys"—including one trip to Wisconsin from April 6 to April 12, 2008—he leaves the children in the care of family members. He also asserted that Hunter had trouble disciplining the boys and that they only displayed anger problems while in her care. Conwell conceded that Hunter called the police to check on the welfare of the boys but contended there was no legitimate reason for her to do so. Conwell argued that he permits Hunter to speak to the boys on the telephone but Hunter often calls after 8:30 p.m. when the boys are already asleep. He conceded he once changed his phone number, but argued he "immediately" gave Hunter the new number. Conwell also asserted that when the boys asked about his girlfriend's relationship to them, he "tried to explain that they will have two mommies with [his girlfriend] to be their stepmother." As to the initial custody proceeding, Conwell argued that Hunter "had the same notice [Conwell] had," "did not appear or even provide the Court with a phone number to reach her," and that the court "defaulted her" is "no one's responsibility except hers." Conwell also denied that he allowed the boys to misbehave in public. He argued the boys were "thriving and physically and emotionally healthy," that they only had anger problems while with Hunter, and that he agreed to allow the boys to attend counseling in Fair-banks to "help the boys deal with the custody issues." Conwell also argued that the boys have medical coverage through his employer and through the Alaska Indian Health Service. He asked the court to deny Hunter's motion.

Hunter's reply brief reasserted some of her factual claims, made others in defense of her parenting abilities, and explained she was "bewildered" by the custody complaint and "could not and cannot afford" a lawyer. She also complained that when Conwell was away from home, he leaves the children with his mother or other relatives or friends rather than allowing Hunter the opportunity to spend time with them. Hunter attached a report from the Kotzebue Police Department regarding its welfare check following Hunter's call to report the person she heard yelling over the telephone and affidavits from a neighbor and Hunter's mother stating that the boys misbehaved upon arrival in Fairbanks in the summers of 2007 and 2008 but improved after living with Hunter. The neighbor said the boys were "difficult to handle and disorderly" and Hunter's mother described them as "unruly and quite difficult to handle, almost to the point of being out of control."

On September 3, 2008, the superior court denied Hunter's motion to modify the custody order without holding a hearing. The court noted that the first inquiry under AS 25.20.110 is whether the parent requesting modification of custody has shown that a substantial change in circumstances has occurred since the time the last custody order was entered. The court concluded that Hunter had not met this burden. The court characterized Hunter's arguments as "a) the alienation of the child's affections," which implicated AS 25.24.150(c)(6), and "b) a failure to meet the child's needs," which implicated AS 25.24.150(c)(1) and (2). The court found the child's question about whether Conwell's girlfriend was his mother was "a natural question" for a five-year old, ruled that a parent's new relationship is not sufficient to require custody modification, and found that the welfare check prompted by Hunter's call to the police resulted in no evidence of abuse. The court advised both

parties that "they are under a continuing obligation to keep each other timely apprised of any change in contact information that occurs in the future" and imposed a schedule of "regular phone calls to be made between 7:30 and 8:00 p.m. on Tuesday, Thursday, and Sunday, unless the parties come to some other written mutual agreement." The court further found the children had health insurance from the Indian Health Service, that "[t]here is insufficient evidence to suggest that [Conwell] has contributed to the children's [behavioral] problems," that Conwell's "employment situation has not changed since the custody order was entered" and that one trip to Wisconsin is not constant travel constituting a change in circumstances.

Hunter filed a timely motion for reconsideration. She alleged that Conwell was not complying with the court's order, explaining that she had repeatedly called the children at the times directed by the superior court but had not been able to speak to them. She provided exhibits documenting over twenty phone calls she made to Conwell in the nine weeks before the default custody proceeding, reiterating that she relied on Conwell to tell her when the custody hearing was to occur. Hunter separately filed a motion requesting enforcement of the telephonic visitation order.

Conwell opposed the motion to enforce telephonic visitation, explaining that he was making an effort to spend time outdoors with the boys in the fall months so they were sometimes unavailable when Hunter called. He also asserted that Hunter should provide him with a calling card if she wanted him to return her calls. Conwell requested that the court modify the times for calls from between 7:30 and 8:00 p.m. to between 7:00 and 7:30 p.m.

The superior court denied the motion for reconsideration, observing that Hunter had not made any new allegations of mistreatment by Conwell's girlfriend nor of any other facts constituting a substantial change in circumstances. The court separately ordered the parties to abide by its telephone visitation schedule [1] and ruled that Conwell did not have to give Hunter the opportunity to care for the children whenever he traveled out of Kotzebue.

Hunter appeals.

## III. STANDARD OF REVIEW

■ We review de novo "[w]hether a moving party has made a prima facie showing sufficient to justify a custody or child support modification hearing" and "will affirm a denial of a modification motion without a hearing 'if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing.'" [2]

## IV. DISCUSSION

### A. Hunter's Challenges to the Initial Custody Determination Are Time-Barred.

■ Though Hunter appeals from the denial of her motion for modification of custody, her brief raises several issues regarding the initial custody determination.[3] Even if we construe these arguments as requests that we set aside the default judgment pursuant to Alaska Civil Rule 60, the rule that allows the most generous time period for challenging a superior court final order, the arguments are all time-barred.[4] Hunter filed her

---

1. The order required Hunter to place calls on the existing schedule and Conwell to "ensure the boys are available" and "ensure the children return their mother's calls in a reasonable manner."

2. *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999) (quoting *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999)) (footnote omitted).

3. She argues that her due process rights were violated by the denial of an opportunity to be heard at the initial custody hearing; that she did not have notice of the custody hearing because she was not told of the change of date; that she did not receive notice of the entry of default; and that Conwell "continually advised he would inform her of date and time of hearing" but "never did so."

4. *See* Alaska R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ... (3) fraud

motion for reconsideration almost two years after the custody order was entered. She does not dispute that she was served with the complaint and that she failed to answer it. She does not claim that she was unaware of the custody order.[5] Hunter could have filed for reconsideration in the trial court at that time, but she did not do so. It is too late to challenge the basis for the 2006 custody decision.

**B. Hunter's Motion for Modification of Custody Alleged Facts Sufficient To Require that the Superior Court Hold a Hearing.**

■ Hunter argues that the absence of findings supporting the default custody order impaired her ability to demonstrate that a significant change of circumstances occurred, and that the superior court failed to consider several arguments that should have been relevant to the resolution of the motion to modify custody. We construe Hunter's argument to be that the superior court erred by denying her request for modification of the custody order without a hearing.[6]

Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." We explained in *Ebertz v. Ebertz*[7] that "modifying an existing custody order entails a two-step process: the parent seeking modification must establish a significant change in circumstances affecting the child's best interests; only if the parent makes this showing does the court proceed to determine

whether modification is in the best interests of the child." [8]

■ The superior court concluded that none of the facts Hunter alleged were sufficient to determine that a change in circumstances had occurred. Where no hearing is held, we will uphold the denial of a motion to modify custody "if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing." [9] This standard requires that we assess whether Hunter alleged facts that, if true, demonstrate that a change in circumstances has occurred. Assessing whether a significant change of circumstances has occurred is difficult in this case; the record does not include oral or written findings from the default judgment proceeding, which would typically provide a "snapshot" of the circumstances that existed at the time the original custody order was entered.[10]

Hunter alleged that the boys may have been exposed to verbal abuse since the time the custody order was entered. She also claims that the boys have "extreme anger problems" manifested in "uncontrolled outbursts" involving hitting, kicking, and screaming. Hunter filed her own affidavit and affidavits from third parties substantiating these claims. Hunter's affidavit includes the statement that she heard Conwell's girlfriend "screaming and belittling her son" in a manner she described as "so vicious [that Hunter] was concerned for her children's

---

(whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.... The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders.").

**5.** Conwell states in his brief on appeal that he provided her with a copy of the court's order the day after it was issued, and Hunter does not deny receiving it.

**6.** *See Bauer v. State, Dep't of Corr.*, 193 P.3d 1180, 1184 (Alaska 2008) ("[P]ro se litigants should be held to less stringent standards than those of lawyers." (quoting *Breck v. Ulmer*, 745

P.2d 66, 75 (Alaska 1987)) (internal quotation marks omitted)).

**7.** 113 P.3d 643 (Alaska 2005).

**8.** *Id.* at 647 (citing *Barrett v. Alguire*, 35 P.3d 1, 5–6 (Alaska 2001)).

**9.** *Harrington*, 984 P.2d at 3 (quoting *Morino*, 970 at 428).

**10.** *Platz v. Aramburo*, 17 P.3d 65, 71 (Alaska 2001) (parent's failure to file a responsive pleading, resulting in default, does not justify entry of custody order without best interests determination).

safety." Hunter also alleged that when she confronted Conwell about her concerns, he admitted that his girlfriend was "being mean to the children," so she was no longer living with them. But Hunter claims she later discovered that Conwell continued to allow his girlfriend to care for the children when he was not present.[11] If established at an evidentiary hearing, the allegation of verbal abuse, the allegation that the boys may still be left in the care of Conwell's girlfriend, and the allegation that the boys have exhibited significant anger and behavioral issues after returning from Conwell's home, could warrant modification of custody. Therefore, Hunter is entitled to a hearing on her motion.

Hunter's motion included other allegations that could justify modification of custody or visitation if proven at an evidentiary hearing. She alleged that Conwell's employment required that he "live away from the children for several weeks at a time." And she argued that her schedule would allow her to provide more consistent care for the boys. The superior court found that Conwell's "employment situation ha[d] not changed since the custody order was entered." But the record provides evidence to the contrary. Conwell's complaint for custody listed his employer as Bering Air. The affidavit he filed in conjunction with his opposition to the motion to modify states that he works for OTZ Telephone. Conwell argued that he only infrequently travels for work. His opposition argues that he traveled to Wisconsin for six days in April of 2008, but we note that the affidavit he filed with his opposition was not notarized because he was "working in a bush location." It is not clear how often his employment requires that he work in a bush location, but Hunter's allegation that work-related travel requires Conwell to leave the children in the care of third-party custodians several weeks each year has not been convincingly refuted. The merit of this allegation must be established at an evidentiary hearing.

Hunter also alleged that Conwell failed to foster her relationship with the boys. The record available at the time the motion was considered showed that Hunter continued to reside in Fairbanks while the boys were living in Kotzebue and that Hunter had modest visitation (approximately eight weeks per year) with no specific provision for holiday visitation. Hunter alleged that Conwell interfered with her ability to talk with the boys by twice changing his telephone number, by not making the boys available when she called, and by failing to let her know where she could contact the boys when he traveled out of town. The court acknowledged the importance of telephonic visitation in this case, imposing a schedule for the telephone calls and ordering the parties to abide by it. But in light of the limited time Hunter had with the boys, the time and expense required to travel between Fairbanks and Kotzebue, and the fact that the record includes evidence that the boys are exhibiting emotional and behavioral problems, we believe that Conwell's alleged interference with telephonic visitation was extremely serious.

In her motion for reconsideration, Hunter alleged that Conwell continued to interfere with her telephonic visitation even after the court ordered a specific schedule for the calls. This allegation was not part of the record at the time the court denied the motion to modify custody, but because this case is remanded for a hearing, we note that Conwell did not refute this allegation. He essentially responded by explaining that he considered it more important to allow the boys to play outside than making them available for Hunter's telephone calls, and he implied that he would not return Hunter's calls unless she provided him with a calling

---

11. The superior court discounted Hunter's allegations because she "offer[ed] no real evidence that [verbal abuse] occurs" and "the allegations [of yelling] were not substantiated" by the welfare check following Hunter's call to the Kotzebue police. But the report resulting from Hunter's request for a welfare check indicates that the police did not visit the house or otherwise investigate the situation after speaking to Conwell on the phone, and Hunter alleges that Conwell admitted to her that his girlfriend was "being mean" to the boys. This is not a circumstance in which Hunter's allegations are "convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing." *Harrington*, 984 P.2d at 3 (quoting *Morino*, 970 P.2d at 428).

card. The court's order did not require that Hunter provide a calling card. Where geographic separation makes frequent in-person visitation impossible, telephonic visitation is crucial.[12] On remand, both parties will have an opportunity to address whether Hunter has had continued difficulty contacting the boys by telephone and if so, whether any interference by Conwell constitutes a substantial change of circumstances.

In light of Hunter's allegations and the uncontested facts, we conclude that she is entitled to an evidentiary hearing to assess whether a substantial change in circumstances has occurred since the time of the original custody order. Abuse,[13] a change in employment requiring significant time away from the children,[14] signs that the children are developing mental health problems,[15] and interference with visitation [16] can all be reasons to find a substantial change in circumstances. If Hunter's assertions are proven, she is entitled to a hearing during which the court considers evidence regarding the factors set out in AS 25.24.150 to determine the custody and visitation schedule that is in the boys' best interests.[17]

## V. CONCLUSION

We decline to address Hunter's arguments regarding the initial custody determination because they are time-barred. We REVERSE the superior court's denial of Hunt-er's motion for modification and REMAND for an evidentiary hearing.

---

12. *Silvan v. Alcina,* 105 P.3d 117, 121 (Alaska 2005) (because distance separated children from non-custodial parent, court reasonably placed enhanced importance on willingness of custodial parent to foster an open relationship with non-custodial parent).

13. *See Barile v. Barile,* 179 P.3d 944, 946–47 (Alaska 2008) (holding that allegations of domestic violence would, if true, constitute a substantial change in circumstances).

14. *See Iverson v. Griffith,* 180 P.3d 943, 946 (Alaska 2008) (remanding for hearing on modification where parent alleged that other parent's new employment situation prevented him from caring for the child on a regular basis and child was often in custody of a family not approved by the court).

15. *Cf. Monette v. Hoff,* 958 P.2d 434, 436 (Alaska 1998) (affirming a custody determination based in part on a parent's ability to meet a child's "psychological and emotional needs").

16. *See Kelly v. Joseph,* 46 P.3d 1014, 1017 (Alaska 2002) (holding that "[a]ctions by a custodial parent which substantially interfere with the non-custodial parent's visitation rights," including "a detrimental and well established pattern of behavior on the part of [the custodial parent] to 'erode the bonds of love and affection between the [other parent] and the children,'" can suffice to meet the changed circumstances requirement (quoting *Hermosillo v. Hermosillo,* 797 P.2d 1206, 1209 (Alaska 1990); *Pinneo v. Pinneo,* 835 P.2d 1233, 1238 (Alaska 1992)) (internal quotation marks omitted)).

17. "The change in circumstances required for modification of visitation rights ... need not rise to the level sufficient to warrant a change of custody." *Acevedo v. Liberty,* 956 P.2d 455, 457 (Alaska 1998) (quoting *Hermosillo,* 797 P.2d at 1209).