NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL R. CLARK, | ) | |
| | ) | Supreme Court No. S-18215 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-4828 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| GABRIELLE IDE, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1936 – December 7, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Jacob A. Sonneborn, Law Office of Jacob Sonneborn, Anchorage, for Appellant. John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

A divorcing couple agreed to joint legal custody of their two children. Over the next few years the parents litigated the issue of the children's schooling: the father wanted the children to remain in their brick-and-mortar school but the mother wanted them home-schooled. Six years after their divorce the parties filed cross-motions for modification of custody. The father argued, among other things, that the parents' persistent inability to agree on schooling constituted a substantial change in

---

\*    Entered under Alaska Appellate Rule 214.

circumstances that justified granting him sole legal custody for purposes of making educational decisions. The court denied the father's motion and awarded attorney's fees to the mother. The father appeals, arguing that the court abused its discretion both in finding no substantial change in circumstances and in awarding attorney's fees.

We affirm the court's denial of the father's modification-of-custody motion as within its discretion. But the attorney's fees award does not properly consider the statutory factors relevant to such awards, so we vacate it and remand for further consideration.

## II.    FACTS AND PROCEEDINGS

Gabrielle Ide and Michael Clark married in 2007 and have two children, now ages 11 and 13. The couple divorced in 2015 and agreed to joint legal custody and shared physical custody of the children, an agreement incorporated into the court's custody decree.

In August 2018 Ide moved for sole legal custody for purposes of making decisions about the children's education. The children were attending a public elementary school, and although both parents had concerns about the school, Clark wanted the children to stay there and Ide wanted to begin home-schooling. While the motion was pending the court ordered that the children begin the 2018-19 school year at the brick-and-mortar school in the interim, and Ide then withdrew her motion. The court advised the parties that "in the future [they] may wish to avail themselves of a parenting coordinator to resolve issues before resorting to motions to modify, which can result in delay and cost to both sides."

In June 2019 Ide moved for the appointment of a parenting coordinator to help the parents prepare for the upcoming 2019-20 school year, presenting three names for the court's consideration. Clark objected to one name on Ide's list, but, because he was "desperate to avoid the expense of yet another round of litigation," he agreed "that

a parenting coordinator may assist the parties in making [a schooling] decision without litigation."

In July the court appointed one of Ide's other suggested parenting coordinators "for the limited purpose of addressing the parties' dispute about choice of school and enrollment for the coming school year." The appointment order explained that the parenting coordinator's decision was binding unless the court overruled it on a parent's objection.

After investigating the children's schooling — and attempting unsuccessfully to mediate a joint decision — the parenting coordinator directed that the children "be enrolled . . . first day of school at Family Partnership Charter School," a home-schooling system in the Anchorage School District, provided that a Russian language tutor could be found for the children. Clark objected to this directive, arguing that it deprived him of the joint legal custody to which he was entitled. In August the superior court upheld the parenting coordinator's decision but explicitly stated that legal custody was not being modified.

In February 2020 the parenting coordinator issued another directive to address schooling going forward. She directed that the children continue their home-school program and granted Clark and Ide equal input into the curriculum. This directive was never filed with the court. The parenting coordinator was released from her duties, at her request, in November 2020.

The next March Ide moved to modify physical custody, visitation, and child support on grounds that Clark had an increase in income and was now based in Florida for work, which affected the amount of time he could be with the children. Clark filed a cross-motion to modify legal custody, contending that "the parties have had ongoing disputes regarding the children's schooling" such that their "inability to agree . . . constitutes a substantial change of circumstances warranting a new custody

decision regarding educational decisions." Ide, opposing the cross-motion, argued that there had been no significant change in circumstances because the parties' inability to agree about schooling was "the same circumstance that existed . . . in 2019 when the court delegated the decision to a parenting coordinator."

In July 2021 the court held a multi-day trial on the cross-motions. In addition to Ide and Clark, the court heard testimony from a sponsor teacher with Family Partnership who oversaw the children's home-schooling, the children's Russian tutor, Ide's retained expert in "home-based education,"[1] and a court-assigned custody investigator.

The testimony indicated that the children were succeeding academically. The Family Partnership representative testified that the children had "done very well" with home-schooling, "enjoyed what they were learning and had a lot of buy-in." The Russian tutor testified that the children were "very motivated" students.

Ide explained her home-schooling process. She testified that she and Clark agreed on the "publisher for the . . . language arts, science, and history" curricula and Clark was sent "every piece of paper that's graded, scanned and e-mailed to him monthly, along with a monthly report." Clark confirmed that he received these reports. Both parents testified that Clark had been open to home-schooling at one point during their marriage; he clarified that it was also during their marriage that he became opposed to it. He argued that with the current home-schooling program he was "essentially cut out from [the children's] education," but Ide contended he had opportunities to participate but did not always take advantage of them. She testified that she kept Clark "[f]ar more informed than he was by [the brick-and-mortar school] at any time."

---

[1]    Finding Ide's expert to be biased in favor of home-schooling over brick-and-mortar schooling, the court gave his testimony no weight in its decision.

Clark testified that he had raised concerns about the children's schooling with the parenting coordinator, who failed to relay his concerns to Ide. The custody investigator testified that the children were aware of their parents' conflicting preferences, which both parents confirmed.

Following the hearing, the superior court denied both Ide's and Clark's motions on grounds that the evidence did "not support modification of the current shared physical custody schedule" or "show a material change in circumstances to support modification of legal custody regarding education." The court explained that "[a]lthough [it] recognize[d] that these parents are both dissatisfied with each other's roles, this is not an actual change in circumstances, but has been going on since the outset of this case." The court did "not believe the current situation [rose] to the level required to modify legal custody to take away Ms. Ide's ability to have a say in the boys' education."

Ide moved for attorney's fees under AS 25.20.115, arguing that "[t]he relative financial resources of the parties [were] exceedingly lopsided" in favor of Clark and that Clark had acted in bad faith. Clark opposed, arguing that Ide's "representation of the parties' financial resources [was] misleading and inaccurate" and her "assertion that [Clark] acted in bad faith in this litigation [was] entirely unfounded." The court granted Ide's motion and handwrote the following explanation: "While the Court does not believe Mr. Clark is acting in bad faith, Ms. Ide is the prevailing party. Further, the Court has concerns that the parties agreed to dismiss their [parenting coordinator] and then immediately commenced litigation on both sides."

In a later order declining to reconsider the legal custody issue, the court explained: "Granting either party legal authority over education decisions in this case would be equivalent to the Court making the decision about school, since both parties are so grounded in their convictions." The court reasoned that "[t]he issue is not whether the Court agrees with home-schooling the boys, since the evidence demonstrated that

their education through home-school is roughly as good as it would be in brick-and-mortar school. The issue is whether removing one parent from the process altogether is in the boys' best interest." The court observed, "At this juncture, the evidence does not show that to be the situation."

Clark appeals both the denial of his motion for modification of legal custody for educational decisions and the award of attorney's fees.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in determining child custody issues."[2] Child custody determinations "will be reversed 'only if, after a review of the entire record, we are convinced that the trial court abused its discretion or that the controlling factual findings made by the trial court are clearly erroneous.' "[3]

"An award of attorney's fees under AS 25.20.115 is subject to reversal only for abuse of discretion or if the court's factual findings supporting the award are clearly erroneous. We use our independent judgment to determine whether the superior court applied the law correctly in awarding fees."[4]

## IV. DISCUSSION

### A. It Was Not An Abuse Of Discretion To Find No Substantial Change In Circumstances Justifying A Modification Of Legal Custody.

"An award of custody of a child . . . may be modified if the court determines that a change in circumstances requires the modification of the award and the

---

[2]     *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1168 (Alaska 2018) (quoting *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001)).

[3]     *Id.* (quoting *Barrett*, 35 P.3d at 5).

[4]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *Collier v. Harris*, 261 P.3d 397, 402-03 (Alaska 2011)).

modification is in the best interests of the child."[5] Modifying custody is a "two-step process" which first requires that "the parent seeking modification . . . establish a significant change in circumstances affecting the child's best interests."[6] "[O]nly if the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child."[7]

### 1. The 2015 custody order serves as the baseline for determining whether there has been a change in circumstances.

A change in circumstances sufficient to justify a custody modification "must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[8] The superior court in this case did not expressly state which prior custody order it considered to be the baseline.[9] Clark argues that it must be the original 2015 custody order granting the parents joint legal custody;[10] Ide argues that it is the 2019 order affirming the parenting coordinator's

---

[5]  AS 25.20.110(a).

[6]  *Collier*, 377 P.3d at 20 (quoting *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009)).

[7]  *Id.* (quoting *Hunter*, 219 P.3d at 196).

[8]  *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009)).

[9]  The court's only mention of an earlier order came in its decision on Clark's motion for reconsideration: "[T]he Court does not find good cause to modify the prior standing court order." The court did not indicate which order it believed to be the "standing court order."

[10]  Ide argues that Clark waived this argument because he "never addressed the baseline in the trial court, nor argued that the 8/20/19 order approving [the parenting coordinator's] decision was not really a court order." But we read Clark's closing argument in the superior court as relying on the agreement incorporated into the 2015

(continued...)

directive that the children be home-schooled for the 2019-20 school year.

We agree with Clark. The 2019 order upholding the parenting coordinator's decision was limited to "the parties' dispute about choice of school and enrollment for the coming school year" — i.e., the 2019-20 school year only. As Clark points out, the court expressly stated in that order that it was not modifying custody: "The parties litigated this same dispute last year before coming to a resolution; custody was not modified then, nor is it being modified now." The parenting coordinator's subsequent directive anticipating continued home-schooling was not filed with the court and thus prompted no modifications to the 2015 order.[11] That order still governed legal custody in 2021 when Clark filed his motion to modify, seeking to modify the court-ordered legal custody as it related to all educational decisions going forward. The baseline for determining whether he demonstrated a substantial change in circumstances is the 2015 order.

### 2. It was within the superior court's discretion to find that there was no substantial change in circumstances since the 2015 order.

A party moving to modify custody "must establish a significant change in circumstances affecting the child's best interests."[12] When reviewing a superior court's findings, "we do not parse each alleged factual assertion of change, but instead look to

---

[10]     (...continued)
custody order. His position is adequately preserved.

[11]     *See Geldermann v. Geldermann*, 428 P.3d 477, 482 n.13 (Alaska 2018) ("The 2014 agreement was not filed with the Alaska court until the current litigation, so our baseline for assessing change is the court-approved 2011 parenting agreement.").

[12]     *Collier*, 377 P.3d at 20 (quoting *Hunter*, 219 P.3d at 196).

see whether the circumstances in the aggregate establish a change of circumstances."[13] "We have repeatedly observed that '[s]ustained noncooperation between the spouses is grounds for denying joint custody, because lack of cooperation hinders good communication in the best interests of the child' ";[14] we have explained that "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."[15] Ultimately, however, "[t]he trial court has broad discretion in determining child custody issues."[16] And "[t]his 'broad discretion' applies to the determination whether there has been 'a substantial change in circumstances affecting the child.' "[17] We have "emphasize[d] that the goal in child custody proceedings is to arrive at a decision that promotes the best interests of the child."[18]

The superior court determined that "[t]he evidence does not show a material change in circumstances to support modification of legal custody regarding education." The court explained that it did "not believe the current situation [rose] to the level required to modify legal custody to take away Ms. Ide's ability to have a say in the [children's] education," because "the lack of communication between the parties [did not rise] to a level of requiring the court to award one parent sole authority over school

---

[13]     *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012).

[14]     *Collier*, 377 P.3d at 21 (quoting *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993)) (alteration in original).

[15]     *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011) (quoting *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009)).

[16]     *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1168 (Alaska 2018) (quoting *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001)).

[17]     *Id.* (quoting *Heather W.*, 274 P.3d at 482).

[18]     *I.J.D. v. D.R.D.*, 961 P.2d 425, 428 (Alaska 1998).

decisions." The court encouraged the parties "to learn to work together to facilitate their boys' education."

Clark cites *Bird v. Starkey*[19] in support of his argument that a disagreement over schooling requires a modification of legal custody. He focuses on a footnote in which we stated that although "the choice of school for a young child should lie with the parents, and not with a judge," the parents' disagreement "may indicate a lack of the cooperation necessary for joint custody to be successful."[20] We further observed in *Bird* that "[t]he submission of the choice of kindergartens for the child to the court is indication in itself that a joint decisionmaking arrangement is not working, at least with respect to educational decisions."[21]

But *Bird* is distinguishable. In *Bird* the superior court was making a determination under a best interests analysis pursuant to the parties' agreement to change legal custody; it did not need to decide whether there had been a substantial change in circumstances as the initial step in the analysis.[22] Furthermore, although it is true that the

---

[19] 914 P.2d 1246 (Alaska 1996).

[20] *Id.* at 1250 n.6 (quoting *McClain v. McClain*, 716 P.2d 381, 386 (Alaska 1986)). The superior court in this case reasoned that "[g]ranting either party legal authority over education decisions . . . would be equivalent to the Court making the decision about school, since both parties are so grounded in their convictions." *Bird* makes clear, however, that the superior court may grant one parent sole authority over a schooling decision without being deemed to have coopted the decision for itself. *Id.* ("While a judicial tribunal may be ill-equipped to decide which school a child should attend, it is competent to decide *who* should decide." (Emphasis in original)).

[21] *Id.*

[22] *Id.* at 1247. In *Bird* the parties negotiated a temporary child custody agreement under which either party could seek to change the agreement under a "best interest[s]" analysis before a specified cutoff date, after which their agreement would be

(continued...)

parties' submission of schooling decisions to the court "*may* indicate a lack of the cooperation necessary for joint custody to be successful,"[23] the superior court's discretion in this area is broad,[24] and it may conclude otherwise without abusing that discretion. We also reiterate a point we made in *Bird*: "The Alaska Legislature has expressed a policy favoring joint custody wherever practicable."[25]

There is no dispute here that the parties' disagreement was not new, having predated the divorce and initial custody agreement. Clark argues, however, that joint legal custody has become impracticable because the disagreement is "evidence of sustained, unworkable noncooperation with respect to a fundamental decision on child rearing — the children's education." But more important than whether the parties disagree is whether their disagreement has caused a breakdown of communication that negatively impacts the children.[26] Here, the superior court could reasonably conclude

---

[22]    (...continued)
deemed permanent. It was only after the cutoff date that the parties would need to make "a showing of change in circumstances to modify custody." *Id.*

[23]    *Id.* at 1250 n.6 (emphasis added).

[24]    *See Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022) (" 'The [superior] court's broad discretion [in custody modification decisions] extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare.' " (quoting *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016))).

[25]    *Bird*, 914 P.2d at 1250 n.6 (citing ch. 88, § 1, SLA 1982 ("[I]t is in the public interest to encourage parents to share the rights and responsibilities of child rearing.")).

[26]    *See, e.g., Edith A. v. Jonah A.*, 433 P.3d 1157, 1159, 1164-65 (Alaska 2018) (reversing trial court's decision denying hearing on motion to modify when father evaded all offered appointment times for court-ordered therapy for child; resisted even
(continued...)

that the parents were still able to communicate without a negative impact. Ide testified that she and Clark agreed on the home-schooling curricula. She sent him monthly reports updating him on the children's education. The parties' emails show open communication in this area. The Family Partnership representative testified that the parents had "done a very good job of individualizing their boys['] education to meet and fulfill their needs for each of them individually."

The superior court could also reasonably view the parties' experience with the parenting coordinator as supporting continued joint legal custody. Although Clark asserts that the court's "delegation of authority on school selection to [the parenting coordinator] . . . only, in the end, exacerbated the parties' inability to communicate and cooperate regarding schooling," the court could have found otherwise based on the testimony of both Ide and the parenting coordinator. Explaining her resignation in November 2020, the parenting coordinator wrote:

---

[26] (...continued)
discussing options for child's middle school; and failed to cooperate in medical decisions for child, demonstrating "a serious lack of cooperation and potential harm to the child's well-being"); *Collier v. Harris*, 261 P.3d 397, 405-06 (Alaska 2011) (affirming denial of modification order when "less than four months had elapsed after the trial on legal custody and the parties were exchanging emails regularly," and holding, "Under these circumstances, the 'lack of communication and cooperation' alleged by [the movant] does not rise to the level of 'sustained noncooperation' sufficient to justify modifying legal custody"); *T.M.C. v. S.A.C.*, 858 P.2d 315, 317 (Alaska 1993) (holding noncooperation sufficient to modify custody when father "acted in a self-centered and manipulative way indicating he is obsessed with his ex-wife" and was "so involved in anger and resentment that he is missing opportunities to do something for [his daughter]"); *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991) (holding joint custody was inappropriate because "the children would be better served by knowing that they will not be the 'cause' of further friction between their parents, and additionally by knowing that decisions made by their mother can be relied upon and not be changed by recourse to their father").

Mr. Clark and Ms. Ide have done very well in the last year in limiting their children's exposure to their conflict. This Parenting Coordinator is rarely called on to intervene in conflict between the parents. While Mr. Clark continues to disagree with his children's participation in the Family Partnership Charter School, they have been able to maintain appropriate communication in meeting the children's educational, social, and physical needs as it's pertained to their education and other general areas.

Ide testified that Clark's participation in the children's education "greatly improved . . . since [the parties] had . . . a parent coordinator." This testimony supports a conclusion that the parents, despite their disagreements, were able to communicate in an effective way about their children's schooling.[27]

Clark sees a "material negative impact on the children" from the parents' "sustained noncooperation" because the children "have had to switch schools, have been subjected to coaching as to their preference, and are trapped in a custody arrangement that leaves schooling up in the air year after year." We acknowledge the testimony that the children were aware of their parents' disagreement. The parenting coordinator wrote in 2019 "that both parents have participated in high conflict behaviors, as well as coaching the children as to their personal preference." And Clark testified that the children "knew that my choice would have been [the brick-and-mortar school] versus their mom's choice would have been home-schooling." But Clark described his discussions with the children on the subject as not "very lengthy," consisting of " 'Your mom and I are working through this together,' and that was about the end of it." The

---

[27] Clark cites to testimony "regarding how substantially [Ide] has cut him out of the [children's] education." But even in his own cited testimony, though he claims he "had to fight to be able to do anything in the program," he concedes that his desires to take the children to Russian tutoring and to "see some of the stuff the kids were doing" were accommodated in the parenting coordinator's second directive.

superior court could reasonably conclude that the effect on the children was not significant enough to justify a finding that circumstances had substantially changed.[28]

In sum, the superior court acted within its discretion when it found that Clark, though disagreeing with Ide about schooling, had not shown that the parents' disagreement constituted a "significant change in circumstances affecting the child's best interests."[29] We therefore affirm its denial of Clark's motion to modify custody.

**B.     It Was Error To Award Attorney's Fees To Ide Absent Proper Consideration Of The Statutory Factors.**

Alaska Statute 25.20.115 governs attorney's fees awards in actions to modify or enforce orders for custody and visitation. The statute requires the superior court to "consider the relative financial resources of the parties and whether the parties

---

[28]     We recognize the difficulty our decision could create for a parent in Clark's position, who must both cooperate with an unwanted custody arrangement and show that cooperation is not working in order to justify a modification.  We do not want to incentivize breakdowns in cooperation intended to create a substantial change in circumstances.  Such a strategy has a high risk of failure; the instigator of such a breakdown is unlikely to be rewarded with an award of legal custody.  And our holding is limited to the facts of this case, in which the parties have disagreed about their children's schooling since before their divorce, and the evidence supports a conclusion that the children have not been negatively impacted as a result.  We emphasize that we are reviewing a discretionary call in a close case; parental cooperation will not always militate against a modification of custody.

[29]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009)).  Clark also argues that the superior court made a best interests determination without properly analyzing the factors in AS 25.24.150, pointing to the court's statement in its order on reconsideration that "removing one parent from the [decision-making] process altogether [does not appear to be] in the boys' best interests."  But because we affirm the superior court's decision that there was no substantial change in circumstances, we do not need to consider its cursory reference to best interests.

have acted in good faith,"[30] and we require that the court "make explicit findings as to" these issues.[31] We use our "independent judgment to determine whether the superior court applied the law correctly in awarding fees" under AS 25.20.115.[32]

In awarding attorney's fees to Ide, the court explained, "While the [c]ourt does not believe Mr. Clark is acting in bad faith, Ms. Ide is the prevailing party. Further, the [c]ourt has concerns that the parties agreed to dismiss their [parenting coordinator] and then immediately commenced litigation on both sides." Clark argues that the court erred by using a "prevailing party" standard[33] rather than considering the issues required by statute — bad faith and relative financial circumstances — and that it "failed to make the required findings regarding the parties' relative financial circumstances to support its award."

We agree. The superior court found that Clark had not acted in bad faith, but it did not make explicit findings concerning the "relative financial resources of the parties," as required by AS 25.20.115 and our precedent,[34] appearing to apply Civil Rule

---

[30] AS 25.20.115 ("In an action to modify, vacate, or enforce that part of an order providing for custody of a child or visitation with a child, the court may, upon request of a party, award attorney fees and costs of the action. In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith.").

[31] *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994).

[32] *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011).

[33] *See* Alaska R. Civ. P. 82(a) ("[T]he prevailing party in a civil case shall be awarded attorney's fees.").

[34] *See Collier*, 261 P.3d at 410; *S.L.*, 883 P.2d at 985; *see also supra* note 30 and accompanying text.

82's prevailing party standard instead.[35] We vacate the attorney's fees award and remand for the superior court to reconsider it in light of the parties' "relative financial resources."[36]

## V.    CONCLUSION

We AFFIRM the superior court's decision denying the motion to modify legal custody for educational decisions.  We VACATE the attorney's fees award and REMAND for further proceedings consistent with this opinion.

---

[35]    Ide cites *Wooden v. Wooden*, No. S-17770, 2022 WL 108600 (Alaska Jan. 12, 2022), for the proposition that Rule 82 applies to proceedings that are far removed from the initial determination of custody.  But *Wooden* involved a child support dispute, outside the ambit of AS 25.20.115.

[36]    Ide argues that we may use the parties' financial resources as reflected in the record to affirm the superior court's award.  But we cannot overlook the possibility that the award may be different upon the superior court's consideration of the appropriate factors.